NATHANIEL F. CUMMINGS *versus* CHARLES F. LITTLE *& als.*

In an action upon a promissory note against several persons, by a holder having express or implied notice that some of them became parties to it as sureties, if the fact is not apparent upon the face of the note, it may be proved by parol testimony.

Whenever one having no interest in a note becomes a party to it, at the request and for the accommodation of another, the relation of principal and surety exists; and the original holder, between whom and the principal the consideration passed, is presumed to have knowledge of the fact. And, if such note is transferred after it is dishonored, the indorsee has implied notice of the fact; and he takes the note subject to the equities existing between the original parties.

A surety upon a promissory note, upon payment by him, is entitled to be subrogated to all the rights and securities of the holder, for the purpose of obtaining reimbursement; and it is the duty of such holder, having such securities from the principal, to retain or dispose of them for the benefit of the sureties. And, if holding such securities, he surrenders them to the principal, without the assent of the sureties, he thereby discharges them to the amount of the value of the securities so surrendered.

Where two persons signed a note as sureties for a third, and the holder, having collateral security from the principal, of less value than the amount of the note, surrendered it to him, without the assent of the sureties, the principal is still liable for the whole note, and the sureties for the excess above the value of the security surrendered.

But if they are all sued in one action, being liable for different sums, the plaintiff cannot recover against either.

THIS case was submitted to the full Court, upon REPORT of the evidence by DAVIS, J. The facts sufficiently appear in the opinion of the Court.

The defendants were joint and several promisors upon three promissory notes, payable to Wendall P. Smith or order. Smith also held a mortgage from one of the defendants, of whom he had the notes, of personal property of less value than the amount of the notes. Afterwards, without consulting the other defendants, who were in fact sureties on the notes, though not signing as such, he discharged the mortgage. At a still later period, the notes having been long overdue, he transferred and indorsed them to the plaintiff in this action. One of the defendants has been defaulted. The other

defendants introduced parol evidence, subject to the objection of plaintiff, that they became parties to the notes as sureties for the one who has been defaulted; and they contended that the surrender of the mortgaged property, by Smith, while he held the notes, discharged them from their liability.

*Anderson & Webb*, argued for the plaintiff:—

1. Testimony that any of the signers were sureties only was improperly admitted, it not having been shown that the payee of the notes or the plaintiff had any knowledge of such relations. *Price* v. *Edmunds*, 10 Barn. & Cress. 578; *Sprigg* v. *Bank of Mount Pleasant*, 10 Peters, 257.

2. The promisee of the notes was not restricted to look to his collateral security for payment; but he might have his action against the promisors, and abandon and relinquish all claim upon the mortgaged property, without impairing the validity of the notes.

3. If the signers were in fact principal and sureties, the holder, who had no knowledge of such relation, would not be affected by it; and knowledge of the position of the signers to each other cannot be inferred from the fact that the notes were given in discharge of the debt of one. *Wilson* v. *Foot*, 11 Met. 288.

4. The defence here set up is rested on the practice of courts of equity; and, if true in fact, and under any circumstances could be sufficient in law to relieve the signers, or any of them from liability, it cannot avail Edward P. Little; for he had the benefit of the mortgaged property, in the application of the proceeds of its sale to the payment of the joint notes of himself and C. F. Little; and consequently all equitable claim, on his part, to have the advantage of security, or to be protected from injury by their employment of it, is fully answered; nor can he disclaim knowledge of and assent to the disposition of the mortgaged property, for he, with his co-signer, had been sued on the notes dated Sept. 21, 1852; and the suit was discontinued, and one of the notes surrendered by Smith, upon receipt of the proceeds of the sale.

*Rand* argued for the defendants : —

1. The notes were indorsed to the plaintiff when overdue, so that he is in the position of Smith, the payee.

2. Parol evidence was admissible to prove that Foss and E. P. Little were only sureties. *Harris* v. *Brooks*, 21 Pick. 195; *Carpenter* v. *King*, 9 Met. 511; *Lord* v. *Moody*, 41 Maine, 127, and cases there cited.

3. Smith, by giving up the security of the furniture furnished by C. F. L., the principal, or by diverting it to a different purpose, without the assent of the sureties, discharged them. *Baker* v. *Briggs*, 8 Pick. 122; *Carpenter* v. *King*, 9 Met. 511; *Commonwealth* v. *Miller*, 8 S. & R., 452. And this, upon the well settled and equitable principle that a surety, upon paying a debt, is entitled to stand in the place of the creditor, and be subrogated to all his rights against the principal.

The opinion of the Court was drawn up by

DAVIS, J. — This is an action upon three promissory notes, of the following tenor : —

"Portland, Feb. 14, 1851.

"For value received, we, jointly and severally, promise to pay Wendell P. Smith, or order, $126,35 in one year from date.                                             "C. F. Little,
"E. P. Little,
"Alexander Foss."

The notes differ only in the time of payment. And C. F. Little gave to Smith a mortgage of personal property, valued at $414, of the same date of the notes, to secure the payment thereof. These notes remained in Smith's hands until they were overdue. While he held the notes in suit, he also held another note against C. F. Little and E. P. Little, amounting to about $300, not secured by mortgage. And he agreed with C. F. Little, that if he would pay the note for $300, he, Smith, would surrender and discharge the mortgage given to secure the other notes. This was accordingly done, without the knowledge or consent of either of the sure-

ties; and the following indorsement was made upon the mortgage:—

"Portland, Oct. 1, 1853. The lien on the within described property, created by the within mortgage, is hereby declared to be discharged, and the property no longer subject to said mortgage; but the debt within described, to secure which this mortgage was given, is still subsisting, and in no part paid. "Wendell P. Smith."

Smith afterwards transferred the notes to the plaintiff, who has brought this suit upon them as indorsee. Charles F. Little has been defaulted. But the other defendants contend, and have introduced evidence to prove, that they were in fact sureties, though the note itself did not so indicate; and that Smith, by surrendering the collateral security taken by him of the principal, has discharged them from their liability.

It is contended that, as these defendants did not sign the notes in such a manner as to show that they were sureties, evidence of that fact is not admissible. Such evidence has often been admitted in suits between such sureties for contribution. *Carpenter* v. *King*, 9 Met. 511; *Lord* v. *Moody*, 41 Maine, 127. And, where the action is against the signers, by a holder having express or implied notice of the fact that any of them are sureties, this fact may be proved by parol evidence. *Harris* v. *Brooks*, 21 Pick. 195.

It is said in argument that there is no evidence that Smith knew that Foss and E. P. Little were sureties. But, as the note was given to him, he could not have been ignorant that the consideration was between him and C. F. Little alone. He must, therefore, have known that the other defendants were sureties. And, as he transferred the notes when overdue, his indorsee, the plaintiff, had implied notice of the fact. When a person becomes a party to a bill or note, at the request and for the benefit of another, whether as guarantor, indorser, or surety, the relation of principal and surety exists, and must be regarded by all parties affected with notice. *Griffith* v. *Reed*, 21 Wend. 502; *Pitts* v. *Congdon*, 2 Comst.

352. This, of course, does not include an indorser of nego-tiable paper in the usual course of business. Such an in-dorser is not a surety for the maker, and is not discharged if the holder extends the time of payment, or surrenders collat-eral security taken from the maker. *Hurd* v. *Little*, 12 Mass. 503.

The plaintiff, in this case, having taken the notes after they were dishonored, they are subject to whatever defence might have been made to them in the hands of Smith. Did the dis-charge of the mortgage, by Smith, operate as a release of the sureties upon the notes?

That an extension of the time of payment given to the principal, or a surrender of collateral security, without the assent of the sureties, will discharge them from their liability, is a principle of law established beyond all controversy, by numerous authorities. 1 Story's Eq. § 325; *Baker* v. *Briggs*, 8 Pick. 122. And this — not on the ground that the contract is thereby changed — but on the ground that the surety is en-titled to be subrogated to all the rights and securities of the creditor; and if the creditor, without the assent of the sure-ties, surrenders or impairs their rights, and thus deprives them of their means of reimbursement, he shall not after-wards compel them to pay the debt. *Bangs* v. *Strong*, 4 Comst. 315; *Clason* v. *Morris*, 10 Johns. 539; *Mathews* v. *Aiken*, 1 Comst. 599.

"The rule here is undoubted," says Lord BROUGHAM, "and is founded in the plainest principles of natural reason and justice, that the surety, paying off a debt, shall stand in the place of the creditor, and have all the rights which he has for the purpose of obtaining reimbursement." *Hodgson* v. *Shaw*, 3 Mylne & Keene, 183. And Chancellor KENT says: — "a surety will be entitled to stand in the place of the creditor, to enforce every security, and to have those securities trans-ferred to him, that he may avail himself of them against the debtor. This right stands not upon contract, but upon the same principle of natural justice upon which one surety is

entitled to contribution against another." *Hays* v. *Ward,* 4 Johns. Chan. Cases, 130.

Applying these principles to the case before us, it is obvious that Smith was under obligation to hold the mortgaged property, not merely for his own benefit, but for the benefit of the sureties upon the notes secured by it. And if he chose, without their assent, to surrender the security without the payment of the notes, it would be contrary to equity and good conscience for him to be allowed afterwards to enforce the payment of the notes against them.

It is said, however, that these facts ought not to be held to discharge E. P. Little, because the money paid when the mortgage was discharged by Smith was appropriated in payment of a note on which he was liable with C. F. Little. And we should be of that opinion, if the money had been *the proceeds* of the mortgaged property. In that case, it could have made no difference to E. P. Little, whether it was applied to one note or another, he being liable on both. But it does not appear that the property was sold. C. F. Little may, at that time, have been able to pay the note without selling the property. Or, as the other note had been put in suit, E. P. Little may have furnished the money with which it was paid. Or, if C. F. Little procured it otherwise, it does not appear that he would not have paid the note, and thus settled the action commenced upon it, though Smith had refused to discharge the mortgage. The case is silent on all these points. And we cannot infer that the release of the collateral security was no injury to E. P. Little, merely from the fact that another note on which he was liable was paid on the same day.

A more difficult question still remains. The notes secured by the mortgage amounted to $505,40. The property mortgaged was valued at $414. One of the notes had been paid. But the three remaining notes, which are now in suit, had been on interest from their maturity; and, at the time when the mortgage was discharged, they amounted to more than the

value of the mortgaged property. It has been treated as a doubtful question, whether the value of the property stated in the mortgage, is not conclusive upon the parties. Admitting that it is conclusive, it is so only in regard to the value at the date of the mortgage. Any subsequent loss or depreciation may properly be taken into consideration in estimating the value of the property at the time when the mortgage was dis-charged. And it is obvious that the discharge of the mortgage could have injured the sureties only to the amount of the value of the property, so estimated. And, though the sureties are discharged to that extent, for the excess of the amount due at the date of the discharge, over and above the value of the property then released, the sureties are still liable. *American Bank* v. *Baker*, 4 Met. 164; *Bank* v. *Colcord*, 15 N. H. 119; 9 Watts & S. 36; 20 Penn. 297; 6 Sm. & Marsh. 24.

But it does not follow that they are liable in this action. If an action at law can be maintained upon the note, it cannot be against the principal and sureties *jointly*. For, in such an action, the defendants cannot be separated in the judgment. They must stand or fall together. But they are not liable for the same amount. How, then, can judgment be entered up? There is no provision of law by which the principal may be held for the whole, and the sureties for a part only, and several executions be issued accordingly. Nor have this Court general equity powers, as in some of the States, by which, after judgment against all the parties, the plaintiff may be enjoined from enforcing it against the sureties for the whole amount. Therefore, in an action at law, unless they may prove the release of the collateral security as an entire defence to the action, they have no remedy. *Baker* v. *Briggs*, 8 Pick. 122. In this action, if liable at all, they are liable for the whole amount of the note. Not being liable for the whole, they cannot be held in this suit for any part. If the plaintiff had released the principal, he would thereby have discharged the sureties. But the release of collateral security, of less value than the amount of the note, discharged the

sureties *pro tanto* only. As to the plaintiff's remedy for the balance, it is unnecessary for us to express any opinion.

According to the agreement of the parties, *a nonsuit must be entered.*

NOTE.—This case having been argued in writing, was submitted to all the members of the Court. The opinion was concurred in by TENNEY, C. J., and by RICE, HATHAWAY, APPLETON, and CUTTING, J. J. MAY and GOODENOW, J. J., dissented, holding that, in this action, judgment should have been rendered against all, for the amount recoverable of the sureties.