The First National Bank of Morris, Appellant, v. Laura M. Stephen, Appellee.

**Gen. No. 9,175.**

Heard in this court at the May term, 1937. Opinion filed June 30, 1937.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, and ARLEY MUNTS, of Morris, for appellant.

S. J. HOLDERMAN, of Morris, and BABCOCK, GILRUTH, BECK & McCONNELL, of Chicago, for appellee.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

Appellant was engaged in a general banking business in the city of Morris, Illinois. Pursuant to the national bank moratorium of March, 1933, it was closed. Subsequently, it developed from an examination by the bank examiners, that approximately $60,000 of paper and securities carried among the assets of the bank would have to be removed and replaced with new assets acceptable to the comptroller of the currency, through the chief examiner's office for that area, before the bank would be permitted to reopen for business. In an effort to comply with the demand of the comptroller, the bank proceeded to take steps to raise the required amount of new assets. It was successful in this attempt. The bank examiner approved the new assets and the bank was thus enabled to resume and continue business.

Among the new assets secured by the bank with which to replace the objectionable paper, was a note from appellee for $5,000. Appellee's note was carried by the bank as an asset from March, 1933, to February 25, 1935, when a judgment by confession was taken thereon by the bank against appellee. The note upon which the judgment was taken was a renewal note, executed under date of October 18, 1934. The affidavit attached to the complaint upon which judgment was taken, states that the consideration for the note "was money loaned by the plaintiff to the defendant." Appellee filed her motion to open up the judgment and for leave to plead, which motion was granted. She set up that the note was without consideration and signed by her as an accommodation paper for the benefit of the payee bank and at its request.

The cause was tried by jury, which found in favor of the defendant, and the court entered judgment on the verdict. The bank has prosecuted this appeal.

Appellant urges three reasons why appellee should be held liable, in addition to the first claim advanced that the note was for money loaned her. They are, first, that the husband of appellee was connected with a corporation engaged in the lumber business, and that her note was given for the purpose of inducing the bank to advance $5,000 to the credit of the lumber corporation; second, that appellee purchased an interest in these assets of the bank to which the examiner had objected; and third, that appellee, in giving her note without any consideration therefor, thereby deceived the bank examiner into believing it was for a valid consideration, and thus participated in a fraud upon the examiner in inducing him to permit the bank to reopen.

With respect to appellant's first contention that the note was given for the purpose of securing a loan to the lumber corporation, it appears the bank was closed and not in a position to make loans. As to the second claim that appellant was purchasing an interest in the objectionable assets, we discover nothing which we consider tends to prove she intended making any such investment of her funds in this paper. The evidence discloses that the bank made out the original note all ready for appellee to sign, and sent it to her by her husband; that when he brought her the note, she signed it as requested and the husband returned it to the bank the following morning. It appears that no interest was to be charged appellee thereon. Subsequent to the giving of the original note, several renewals were taken, and no interest was ever charged. There is no merit in appellant's contention that appellee gave her note for the purpose and intent to deceive the bank examiner, and is thereby estopped to assert that it is not a valid obligation. Those cases holding makers of accommodation paper liable in instances similar to this, present situations where the bank became insol-

vent and the rights of creditors and innocent third parties were involved, or where a consideration for the note was expressly found. Appellant bank in this case is a going concern and the rights of creditors are not involved. Neither do we find that any consideration was given for the note. Therefore, the bank having actively participated in the alleged deceit and fraud, and having procured the note upon its own solicitation from the person sought to be estopped, would likewise be estopped from asserting any rights thereunder. *First Nat. Bank v. Reed,* 198 Cal. 252, 244 Pac. 368. It would be the policy of the law to leave the parties where it found them.

A recent and very similar case to this, wherein it is held that the maker of an accommodation note given to a National Bank to enable it to reopen, is not estopped to set up lack of consideration therefor, is found in *Litchfield Nat. Bank v. McBride,* 289 Ill. App. 420. Such rule prevails in instances where the plaintiff bank is the accommodated party and is a going concern.

The rule has been recognized that where directors or stockholders of a bank execute their several notes, payable to its order, to make good an impairment of its assets due to certain doubtful and objectionable paper which the bank examiner has demanded withdrawn, and which notes are so given in order to enable the bank to continue to do business, such stockholders and directors cannot set up failure of consideration on the ground that such notes were accommodation paper, because of the fact that the directors and stockholders are interested in the continuation of the bank as a going concern, and these things constitute a consideration for their notes. Appellee was not a stockholder or director in appellant bank. The rule with reference to such notes given to bolster up a failing bank, which later goes into receivership, does not apply here, as this bank is a going concern and the

rights of creditors do not appear to be involved in this record.

The capital structure of this bank was impaired. The bank examiner would not permit it to reopen until it had taken out the assets to which he objected and replaced them with assets acceptable to him. Under such circumstances, it is not probable that the bank inaugurated a selling campaign of this paper to its friends. We are disposed toward the position of appellee that the transaction was the borrowing of credit by the bank in order to enable it to raise enough new assets to offset the bad paper that must be taken out before it could reopen. It appears that some time subsequent to the delivery of appellee's note to the bank, a printed instrument was sent her through the mail which was designated as a participating paper, having reference to the assets that had been taken from the bank in lieu of the new assets substituted therefor. But this instrument was not presented to appellee at the time of her signing the note and was no part of that transaction. The doubtful paper was taken charge of by the cashier of the bank, for the purpose of liquidating same as and when possible.

The rule is well established that an accommodation note, given by the payor to the payee, cannot be enforced by the payee against the maker. *Straus v. Citizens' State Bank of Elmhurst*, 254 Ill. 185; *Peoples Bank of Glasgow v. Yager* (Mo.), 6 S. W. (2d) 633; *Anamoose Nat. Bank v. Dockter*, 56 N. D. 33, 216 N. W. 206; *United States Nat. Bank of Superior, Wisconsin v. McCabe*, 57 N. D. 456, 222 N. W. 474; *Central Nat. Bank of Waco v. Lawson* (Tex.), 27 S. W. (2d) 125; *Pomeroy v. Farmers Sav. Bank of Shelby*, 203 Iowa 524, 211 N. W. 219; *Farmers Bank of Billings v. Schmidt*, 223 Mo. App. 1098, 25 S. W. (2d) 525; *Hayward v. Ham* (Mo.), 59 S. W. (2d) 723.

It has been held that where a note is given to a bank as an accommodation, and the bank pledges the note

to another bank, and the maker is obliged to pay the same, he is entitled to recover from the bank to which he gave the note. *Ruvenacht v. German-American Bank,* 212 Ill. App. 68; 287 Ill. 266.

The object sought to be accomplished by the bank was to raise enough new credit to take the place of the objectionable assets, which the bank examiner demanded removed before he would permit the bank to reopen. The object was realized. It came about at the instance of the bank examiner and through the agency of the officers of the bank who solicited and secured sufficient new assets to take the place of the bad. Appellee was caused to lend her credit to the bank for the above purpose and in the above manner, to the extent of $5,000, evidenced by her note. It is not the purpose for which the accommodation is given that binds or releases the party furnishing the accommodation, but it is the fact of the accommodation. The relation between the payee bank and appellee is not changed by the purpose that the bank had in mind in taking her note. The fact that the bank may claim that it used the note to deceive the bank examiner in inducing him to permit it to reopen for business is in no way an estoppel against appellee in this action. No question of the rights of creditors against an insolvent bank is involved in this case. Neither does it avail the bank anything to say that the note in this suit, since it is a renewal of the accommodation note, is therefore binding upon the maker. It is the same obligation and the note is still in the hands of the original accommodation payee. There are no circumstances in this situation that serve to work an estoppel on the part of the defendant. It is the original debt, and the relationship of the parties have in no way changed. Nothing has arisen because of the renewals that effect the rights of the parties as they existed under the original note. Under such circumstances,

lack of consideration in an original accommodation note, is carried into and attaches to a renewal note.

The cases above referred to present situations similar to this case and are to the effect that notes made payable to a bank for the accommodation of the bank, even though for the purpose of deceiving the bank examiner, are accommodation paper and the bank as a going concern cannot recover thereon against the maker. However, the bank examiner knew the condition of this bank. It was at his instance the new assets had to be raised. The examiner was thus in a position to know that the bank had nothing with which to raise new assets, except the good will of such persons as it could prevail upon to advance same.

Appellant complains about certain instructions given on behalf of appellee, a modification of one of its instructions, and the refusal of three of its offered instructions. Ten instructions were given on behalf of appellant, and seven on behalf of appellee. The issues involved between the parties were clearly before the jury, and on the whole of the record, we think the jury was fairly instructed and not misled by any of the instructions of which appellant complains.

The question whether the defendant was an accommodation maker for the plaintiff was a proper question for the jury. It resolved that point in her favor, and we are not disposed to disturb that finding. There is evidence tending to prove such fact. From the facts and circumstances appearing in the case, we are not in accord with appellant's argument that appellee was investing her funds in this bad or doubtful paper, or that she was borrowing money from the bank for the lumber corporation.

We are of the opinion that the verdict of the jury is supported by the evidence and that the judgment of the court thereon should be affirmed.

*Judgment affirmed.*